(June 27, 1913.)

# E. A. LEACH, Appellant, v. THE VILLAGE OF NEZ PERCE, a Municipal Corporation, et al., Respondents.

[133 Pac. 926.]

COUNTY SEAT—TEMPORARY AND PERMANENT LOCATION THEREOF—STATUTORY AND CONSTITUTIONAL CONSTRUCTION—QUALIFICATIONS OF VOTERS.

1. The temporary county seat of Lewis county was established by the legislature, and by the act creating said county the legislature delegated the authority to establish the permanent county seat of said county to the electors of said county.

2. *Held*, that the vote cast at said election for Ilo and Vollmer cannot be consolidated and counted together.

3. The provisions of sec. 2, art. 18, of the state constitution, and sec. 357 of the Rev. Codes, refer to the removal of a county seat from its permanent location and not to the permanent location of a county seat where the legislature has temporarily fixed the county seat of a new county and left it with the electors to select the permanent county seat.

4. Under the provisions of said sections of the constitution and statute, no person is permitted to vote at an election held for the removal of a county seat that has been permanently fixed who has not resided in the county six months and in the precinct ninety days before he offers to vote.

5. The legislature has plenary power in the creation of new counties, except as limited by the provisions of the constitution, and in creating new counties it has the authority to establish the permanent county seat, or it may delegate that power to the qualified electors of such new counties, and an election for such purpose is not held for the purpose of removing a county seat permanently located but for the purpose of locating a permanent county seat.

6. Under the act creating Lewis county, the legislature delegated the authority to locate the permanent county seat of said county to the electors of said county qualified to vote at a general election.

7. *Held*, that the electors at said election were not required to reside in the county six months and in the precinct ninety days, but if they had the other qualifications and had resided in the state six months and in Lewis county thirty days, they were qualified to vote at such election.

8. *Held*, the evidence does not show that fraud or corruption was practiced at said election.

APPEAL from the District Court of the Second Judicial District, in and for Lewis County. Hon. Edgar C. Steele, Judge.

Action to set aside the election held for the purpose of locating the permanent county seat of Lewis County. Judgment holding said election valid. *Affirmed.*

J. S. McDonald and C. T. McDonald, for Appellant.

"If the fraud be clearly shown to exist to such an extent as to satisfy the mind that the return does not show the truth, and no evidence is furnished by either party to the contest, and no investigation of the committee enables them to deduce the truth therefrom, then no alternative is left but to reject such return." (McCrary on Elections, 4th ed., sec. 571; *Covode v. Foster,* 2 Bart. 600, 4 Brewst. (Pa.) 414; *Littlefield v. Green,* Bright. Elec. Cas. 493.)

"It is not competent for a state legislature, in providing for a special election, to determine the location of a county seat or to determine any other matter, to require any other qualifications for voters at such election than those prescribed by the constitution." (McCrary on Elections, 4th ed., sec. 49.)

The election is null and void from the fact that the election was not uniform, in that one class of persons was permitted to vote in one precinct and was excluded in another. (*Knight v. Trigg,* 16 Ida. 264, 100 Pac. 1060.)

The statutes do not say that the contestant must show enough fraudulent votes to change the result, but they do say that if the vote of the precincts where the fraud is shown is sufficient to change the result that the election may be contested. (*Judkin v. Hill,* 50 N. H. 140; McCrary on Elections, 4th ed., sec. 576; *Russell v. McDowell,* 83 Cal. 78, 23 Pac. 183.)

Frank E. Fogg, S. O. Tannahill and P. W. Mitchell for Respondents.

A trifling error is not evidence of fraud, and is absolutely no reason for disfranchising thousands of electors. Such

errors in themselves are no indication of fraud and will not set aside the vote of the precinct. (McCrary on Elections, secs. 575, 583.)

The presumption is that an election is honestly conducted, and the burden of proof is on the party assailing the return. (McCrary on Elections, secs. 515, 516, 577.)

The terms "elector" and "qualified elector" are used interchangeably, and an "elector" is a "qualified elector." (*Wilson v. Bartlett*, 7 Ida. 271, 62 Pac. 416.)

The provisions of sec. 2, art. 18 of the constitution, relating to the removal of county seats, have no application to the location of county seats in newly organized counties, but relate only to the removal of county seats after they have been permanently located. (*Doan v. Commissioners*, 3 Ida. 38, 26 Pac. 167.)

SULLIVAN, J.—This action was brought to have the election in Lewis county, which was held for the purpose of establishing permanently the county seat of that county, under the provisions of sec. 4 of an act to create and organize the county of Lewis, approved March 3, 1911 (see Sess. Laws 1911, p. 77), declared and adjudged void.

The action was tried by the district court and judgment entered sustaining the validity of said election. The appeal is from the judgment.

Several errors are assigned, but the principal assignment is based on the insufficiency of the evidence to justify the findings of the court.

It appears from the record that an election was held in Lewis county on the 5th of November, 1912, for the purpose of locating the permanent county seat of said county, as provided by sec. 4 of the above-cited act. That section is as follows:

"The Temporary County seat of said County of Lewis shall be, after the establishment of said County, located at the Village of Nez Perce, Idaho, and at the general election to be held in 1912, a vote, as provided by law, shall be had as to

the location of the permanent County Seat of said Lewis County."

In the month of November, 1911, the citizens of the western part of Lewis county held a mass meeting at Ilo and selected a block of ground 300 feet square for the permanent location of county buildings, in the town of Vollmer, which town adjoins and borders on the town of Ilo. Said block of ground so selected also borders on the townsite of Ilo, and was to be donated to the county provided the county seat was located there.

The names of the towns of Ilo and Vollmer both appeared on the official ballot at said election and also the town of Nez Perce. The result of the election as shown by the returns was that 1539 votes were cast in favor of Nez Perce, 735 in favor of Ilo and 573 in favor of Vollmer, thus giving Nez Perce a clear majority of 231 over the combined votes of Ilo and Vollmer.

It is first contended that since the towns of Ilo and Vollmer were adjoining towns and that the citizens had selected a block of ground for the erection of the county buildings in Vollmer and adjoining Ilo, that the votes cast for both Ilo and Vollmer should be counted together, and if that were done, Ilo and Vollmer would have a majority of the votes, provided certain other alleged illegal votes were excluded that were counted for Nez Perce. In support of the contention that all of the votes cast for Ilo and Vollmer should be counted together, counsel cites *Smith v. Magourich*, 44 Ga. 163; *State v. Woody*, 17 Ga. 612; 11 Cyc. 376. In our view of the matter, said authorities are not in point in the case at bar, and the Ilo-Vollmer votes ought not to be consolidated or counted together. However, it would make no difference whether the votes for said two towns were counted together or not.

The next contention is based on the insufficiency of the evidence to support the findings. Under that head it is contended that there were no legal votes cast at said election except those cast in Cold Springs and Kamiah precincts, for the reason that in the other precincts in the county all persons were permitted to vote at said county seat election who had

resided in the state six months and in the county thirty days, and it is contended that under the provisions of sec. 2, art. 18, of the state constitution, and sec. 357, Rev. Codes, no person should have been permitted to vote at said election who had not resided in said county six months and in the precinct where he offers to vote ninety days.

The question then is directly presented as to whether or not all persons voting at said election must have resided in the county six months and in the precinct ninety days.

Said sec. 2, art. 18, of the constitution, is as follows:

"No county seat shall be removed unless upon petition of a majority of the qualified electors of the county, and unless two-thirds of the qualified electors of the county, voting on the proposition at a general election, shall vote in favor of such removal. A proposition of removal of the county seat shall not be submitted in the same county more than once in six years, except as provided by existing laws. No person shall vote at any county seat election, who has not resided in the county six months, and in the precinct ninety days."

Said sec. 357, Rev. Codes, refers to sec. 3, art. 18, of the constitution, and is as follows:

"Every person over the age of twenty-one years, possessing the qualifications following, shall be entitled to vote at all elections: He shall be a citizen of the United States and shall have resided in this State six months immediately preceding the election at which he offers to vote, and in the county thirty days: *Provided,* That no person shall be permitted to vote at any county seat election who has not resided in the county six months, and in the precinct ninety days, where he offers to vote; nor shall any person be permitted to vote at any election for the division of the county, or striking off from any county any part thereof, who has not the qualifications provided for in Section 3, Article 18, of the Constitution; nor shall any person be denied the right to vote at any school district election, nor to hold any school district office on account of sex."

It will be observed that said section 3 of the constitution does not apply to the creation of new counties.

Sec. 19 of art. 3 of the constitution provides that the legislature shall not pass local or special laws in any of the cases therein enumerated, one of which is as follows: "Changing county seats, unless the law authorizing the change shall require that two-thirds of the legal votes cast at a general or special election shall designate the place to which the county seat shall be changed." That provision provoked considerable debate in the Constitutional Convention. See vol. 2 of Idaho Constitutional Convention, pp. 1227, 1233, 1234, 1236 and 1239; and said sec. 2 of art. 18 of the constitution was also debated to some extent, as shown by said vol. 2, Idaho Const. Con., pp. 1775–1800. It clearly appears from those debates that said sections of the constitution were intended to apply to the removal of a county seat and not to the location of a permanent county seat upon the organization of a new county.

The provisions of said sec. 19, art. 3, above referred to are not applicable to the case at bar, nor are the provisions of sec. 2 of art. 18 of the constitution above quoted applicable, as this is not a case of a removal of a county seat.

Sec. 357 of the Rev. Codes, above quoted, was first enacted by the first state legislature. (See Sess. Laws 1890–91, p. 93.) The first section concerning the removal of county seats reads as follows: "All elections for the removal of county seats shall be held at the same time and place at which general elections are held." Then follow provisions for circulating petitions and the procedure for holding such elections. Those sections were adopted for the purpose of carrying into effect the provisions of the constitution above quoted. Said act of 1891 was re-enacted in 1899 simply to cure some irregularities that were supposed to exist in the passage of the former act. The provisions concerning the removal of county seats were not changed. Upon a revision of the statutes of this state, as found in the Revised Codes of 1909, the act of 1891 and 1899, which was an act providing for the holding of general and special elections, was divided up by the code commissioner under the proper heads, and it is clear that that part of said

sec. 357, to wit, "provided, that no person shall be permitted to vote at any county seat election who has not resided in the county six months and in the precinct ninety days, where he offers to vote," was intended to apply to county seat removals and not to elections held for the purpose of locating permanently the county seat of a new county. If the law as it stood prior to the time of said code revision applied only to the removal of county seats, the code commissioner was not authorized to extend the application of that provision in any manner, and has not done so.

The legislature has plenary power in the creation of new counties except as limited by the provisions of the constitution, and in the creation of a new county it has authority to establish the permanent county seat; but in the creation of Lewis county the legislature did not exercise that power but delegated it to the electors of the county. Said question was to be voted upon at the next general election after the creation of said county. That election was not for the purpose of removing a county seat permanently located, but for the purpose of fixing a permanent county seat. The qualifications of electors to vote for the removal of a permanent county seat, as prescribed by the constitution, do not apply to the electors voting for the permanent location of a county seat when the legislature after creating a new county has provided that the permanent county seat shall be determined by an election, unless the legislature also provided that at such election the qualifications of the electors must be the same as the qualifications for the removal of a county seat, as prescribed by the constitution. In this case the legislature did not do that, but submitted the question of the location of a permanent county seat to the electors, and it was clearly the intention to permit each and every voter who was qualified to vote in that county at the general election for state and other officers to vote upon the question of the permanent location of the county seat.

There is, therefore, no merit in the contention of appellant that an elector was required to reside in said county six months and in the precinct ninety days to be entitled to vote at said election.

Fraud and corruption at said election are charged in the complaint but there is not sufficient evidence in the record to show that there was any fraud or corruption practiced at said election.

It is also charged that the number of electors had greatly increased in certain precincts in said county over those voting at the prior election. But there is nothing in the record to show that the increase was not a natural and fair increase or that at the previous election many persons had not registered and voted. This court takes notice that the population of the counties of this state is rapidly increasing.

It is contended that there was an error in the count of the ballots at said election; that there were six more ballots cast for the permanent location of the county seat than there were voters who actually appeared at the poles and voted. That fact, however, would not so taint the whole election with fraud as to require the setting aside of said election. After deducting said six ballots from the majority vote received by the Village of Nez Perce, there would still be a majority of 225 over the combined vote of Ilo and Vollmer.

We do not find sufficient error in the record to require the reversal of the judgment. The judgment must therefore be affirmed, with costs in favor of the respondents.

Ailshie, C. J., and Stewart, J., concur.